UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ACCESS CARE MSO, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 18 C 7273 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| OBERHEIDEN LAW GROUP PLLC, and NICK OBERHEIDEN, | ) ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Upon the deterioration of the parties' attorney-client relationship, Plaintiff Access Care MSO, LLC ("Access Care") filed this lawsuit against Defendants Oberheiden Law Group, PLLC ("Oberheiden Law") and its principal, Nick Oberheiden.[1] Access Care claims that Defendants (1) violated the Illinois Attorney Act, 705 Ill. Comp. Stat. 205/1, by engaging in the unauthorized practice of law in Illinois; (2) breached the parties' contract; (3) tortiously interfered with Access Care's contracts with certain medical practices in Texas; and (4) committed fraud in making representations about their practice of law in Illinois. Defendants seek the transfer of this case to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). Because Defendants have failed to establish that the balance of private and public interests strongly favors such a transfer, the Court denies Defendants' motion.

---

[1] Access Care filed suit in Illinois state court. Oberheiden then removed the case to federal court based on the Court's diversity jurisdiction, 28 U.S.C. § 1332. The parties have confirmed, through their supplemental filings, that diversity jurisdiction exists in this case. *See* Docs. 22, 23.

# BACKGROUND[2]

Access Care, based in Oak Brook, Illinois, provides management services for health care entities. The majority of the medical practices that Access Care manages are located in Texas and owned by a relative of Access Care's owner. Access Care sought legal help with compliance issues in both Illinois and Texas. After searching the internet, Access Care hired Oberheiden Law based on its advertisements that it has both a Texas and Illinois practice. On its website, Oberheiden Law specifically advertises that it has a "Team of Chicago Health Care Fraud Defense Attorneys," with several pages devoted to its provision of Illinois and Chicago health care fraud and federal criminal defense. Doc. 1-1 ¶ 14. Oberheiden Law's webpages also advertise Oberheiden as a Chicago and Illinois defense attorney. Oberheiden and the other attorneys at Oberheiden Law are not licensed to practice law in Illinois, although Oberheiden has gained admission to practice before the U.S. District Court for the Northern District of Illinois after Access Care retained Oberheiden Law. Oberheiden Law's website does include a disclaimer that Oberheiden is not licensed in Illinois and limits his practice to federal matters.

In Access Care's agreement with Oberheiden Law, effective February 15, 2017, Oberheiden Law agreed to provide corporate and regulatory advice regarding Access Care's health care projects, to conduct a review of and training concerning compliance issues, and to establish a corporate compliance program. The agreement further provided that Oberheiden Law representatives would work on-site in Illinois for at least fifteen days. Although this did not happen, Oberheiden and another Oberheiden Law employee, Chris Anderson, did each spend a day at Access Care's Oak Brook facility. Anderson, who is not licensed to practice law,

---

[2] In addressing Defendants' motion to transfer, the Court is not limited to the pleadings. *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005). The Court resolves all factual conflicts and draws all reasonable inferences in Access Care's favor. *Harris v. comScore, Inc.*, 825 F. Supp. 2d 924, 926 (N.D. Ill. 2011).

provided Access Care with legal advice about ERISA compliance and the structuring of contracts.

Access Care agreed to pay Oberheiden Law $7,500 per month for legal services, with that amount increased in the first two months to a total of $45,000 to complete the contemplated compliance program. Over approximately a year, Oberheiden Law billed Access Care $165,000. But Oberheiden Law never created a compliance program, as contemplated by the parties' agreement. It did, however, provide various services to the Texas medical practices with which Access Care was affiliated.

Because it concluded that Oberheiden Law was not providing the agreed upon services, Access Care terminated the parties' agreement. In October 2018, Oberheiden Law sent the Texas medical practices a letter demanding $1 million in payment for their use of corporate compliance documents that Oberheiden Law had prepared. Oberheiden Law also threatened to file suit against the Texas medical practices.

In response, Access Care filed this lawsuit in the Circuit Court of DuPage County on October 26, 2018. Oberheiden then removed it to federal court several days later. The same day that Access Care filed this lawsuit, the Texas medical practices filed suit against Defendants in the District Court of Jefferson County, Texas, seeking a declaratory judgment that the Texas medical practices were clients of Defendants and did not misappropriate any documents. On October 29, 2018, Oberheiden Law filed suit against the Texas medical practices in the District Court of Dallas County, Texas, claiming that the medical practices stole Oberheiden Law's work product for their own commercial gain. Oberheiden Law dismissed this suit without prejudice on January 9, 2019.

# ANALYSIS

Defendants move to transfer venue pursuant to § 1404(a). Section 1404(a) provides that the Court may transfer venue to another district "for the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). For the Court to transfer the case under § 1404(a), Defendants must demonstrate that "(1) venue is proper in this district; (2) venue is proper in the transferee district; (3) the transferee district is more convenient for both the parties and the witnesses; and (4) transfer would serve the interest of justice." *Gueorguiev v. Max Rave, LLC*, 526 F. Supp. 2d 853, 856 (N.D. Ill. 2007). Defendants bear the burden of demonstrating that transfer is "clearly more convenient." *Heller Fin. Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (quoting *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986)). The transfer decision is committed to the Court's sound discretion because the "weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude." *Coffey*, 796 F.2d at 219.

## I. Proper Venue

The parties do not dispute the propriety of venue in this District. Access Care, however, argues that venue is not proper in the Northern District of Texas, at least with respect to the Illinois Attorney Act claim. The Illinois Attorney Act provides:

> Any person practicing, charging or receiving fees for legal services or advertising or holding himself or herself out to provide legal services within this State, either directly or indirectly, without being licensed to practice as herein required, is guilty of contempt of court and shall be punished accordingly, upon complaint being filed in any Circuit Court of this State. . . . Such proceedings shall be conducted in the Courts of the respective counties where the alleged contempt has been committed in the same manner as in cases of indirect contempt and with the right of review by the parties thereto.

705 Ill. Comp. Stat. 205/1. Access Care claims that, because the statute specifically provides that proceedings under the Illinois Attorney Act "shall be conducted in the Courts of the respective counties where the alleged contempt has been committed," Access Care could not have originally brought the Illinois Attorney Act claim in the Northern District of Texas, making that venue an improper venue for this case. *See* 28 U.S.C. § 1404(a) (specifying that transfer must be "to any other district or division where [the case] might have been brought").

Defendants respond that the statutory provision for exclusive venue in Illinois courts for Illinois Attorney Act claims does not prevent a federal court in another state from considering such claims. Instead of reading the Illinois Attorney Act as precluding the jurisdiction of federal courts, the Court agrees that it "simply governs venue within Illinois's own courts and cannot prevent a plaintiff from filing an action in diversity in federal court." *Edelson PC v. Bandas Law Firm PC*, No. 16 C 11057, 2018 WL 3496085, at *9–10 (N.D. Ill. July 20, 2018) (rejecting argument that plaintiff could only bring Illinois Attorney Act contempt claim in Illinois state court); *see also Goetzke v. Ferro Corp.*, 280 F.3d 766, 779 (7th Cir. 2002) ("Once Congress has conferred subject matter jurisdiction on the federal courts, state law cannot expand or contract that grant of authority."). Therefore, the venue provision in the Illinois Attorney Act does not prevent the filing of a claim for its violation in the Northern District of Texas based on diversity jurisdiction. *See Truck Components Inc. v. Beatrice Co.*, 143 F.3d 1057, 1061–62 (7th Cir. 1998) (finding that provision vesting Delaware Chancery Court with exclusive jurisdiction over certain claims did not prevent federal court in another state from exercising jurisdiction over those claims). Because venue is a procedural issue, requiring application of federal law in diversity cases, *see Gleich v. Tastefully Simple, Inc.*, No. 05 C 1415, 2005 WL 3299187, at *5 (N.D. Ill. Dec. 2, 2005), the Court finds the Northern District of Texas an appropriate venue

because the Oberheiden Defendants reside there, *see* 28 U.S.C. § 1391(b)(1). The Court proceeds to consider the remaining factors in the transfer analysis.

## II.    Convenience of the Parties and Witnesses

In evaluating the convenience of the parties and witnesses, the Court considers (1) Access Care's choice of forum, (2) the situs of material events, (3) the relative ease of access to proof, (4) the convenience of the parties in litigating in the respective forums, and (5) the convenience of the witnesses. *Sojka v. DirectBuy, Inc.*, No. 12 C 9809, 2014 WL 1089072, at *2 (N.D. Ill. Mar. 18, 2014).

Courts typically give a plaintiff's choice of forum substantial deference, particularly where the chosen forum is the plaintiff's home forum, as it is here. *Brandon Apparel Grp., Inc. v. Quitman Mfg. Co.*, 42 F. Supp. 2d 821, 833 (N.D. Ill. 1999); *see also In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (noting that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed" but "[r]arely . . . is not never" (citation omitted) (internal quotation marks omitted)). This deference decreases "where the plaintiff's chosen forum is not the plaintiff's home forum or has relatively weak connections with the operative facts giving rise to the litigation." *Body Sci. LLC. v. Boston Sci. Corp.*, 846 F. Supp. 2d 980, 992 (N.D. Ill. 2012). Defendants argue that Texas has a stronger connection to the facts underlying the litigation because Access Care hired Defendants to provide services to the Texas medical practices and performed the majority of its work under the agreement there. Indeed, the parties' agreement provides that Texas law governs, with jurisdiction in the courts of Dallas County, Texas.[3] But Access Care also brings claims concerning the representations Defendants made about their Illinois law practice, influencing Access Care's decision to hire

---

[3] Defendants do not argue that this clause amounts to a forum selection clause requiring the Court to transfer the case to the Northern District of Texas and instead just use it as one factor they claim supports transfer.

6

Defendants to perform work in Illinois. And the parties do not dispute that Oberheiden and another Oberheiden Law representative traveled to Illinois to meet with Access Care representatives on two occasions. Because material events occurred in both Illinois and Texas, this factor is neutral.

Next, the parties essentially agree that the ease of access to documents in both Illinois or Texas does not weigh heavily in favor of either forum because the Court presumes that such documents are easily transportable. *See Rabbit Tanaka Corp. USA v. Paradies Shops, Inc.*, 598 F. Supp. 2d 836, 840 (N.D. Ill. 2009) ("In this day and age, transferring documents from one district to another is commonplace and, given the widespread use of digital imaging in big-case litigation, no more costly than transferring them across town."). While each side claims that its home state houses more documents, they do not dispute that records are easily transferrable given technology advances.

In evaluating the convenience of the parties, the Court considers the parties' residences and their ability to bear the expense of litigating in each forum. *Brandon Apparel*, 42 F. Supp. 2d at 834. This factor is similarly neutral, where Access Care and Oberheiden Law are both corporations, and Oberheiden makes representations that he is an Illinois lawyer, suggesting that this district would not be particularly inconvenient for him. The parties have not raised any specific basis to find having to litigate in either district would impose a significant burden, instead only arguing that each side's preferred district is more convenient for that side. But the Court should not transfer a case merely to shift the inconvenience from one party to another. *Sage Prods., Inc. v. Devon Indus., Inc.*, 148 F.R.D. 213, 216 (N.D. Ill. 1993).

The Court therefore turns to the convenience of witnesses, "often viewed as the most important factor in the transfer balance." *Brandon Apparel*, 42 F. Supp. 2d at 834 (quoting *Rose*

*v. Franchetti*, 713 F. Supp. 1203, 1214 (N.D. Ill. 1989)). The Court considers not just the number of witnesses located in each forum but also the nature, quality, and importance of their testimony. *Id.* The Court gives less weight to the convenience of party witnesses, whom the Court presumes would appear voluntarily at trial in either district. *See AL & PO Corp. v. Am. Healthcare Capital, Inc.*, No. 14 C 1905, 2015 WL 738694, at *4 (N.D. Ill. Feb 19, 2015) ("[T]he convenience of witnesses who are within a party's control, such as a party's employees, is far less important than the convenience of non-party witnesses."); *Bullard v. Burlington N. Santa Fe Ry. Co.*, No. 07 C 6883, 2008 WL 4104355, at *4 (N.D. Ill. Aug. 28, 2008) ("Courts are less concerned about the burden that appearing at trial might impose on witnesses who are either employees of parties or paid experts; it is presumed that such witnesses will appear voluntarily."). "In assessing this factor, courts focus on the nature and quality of the proposed testimony and its relevance to the case." *Kjaer Weis v. Kimsaprincess Inc.*, 296 F. Supp. 3d 926, 932 (N.D. Ill. 2017).

Defendants claim that the lawsuit will involve testimony from current and former employees of Oberheiden Law, in addition to witnesses from the Texas medical practices. All of these witnesses are located in Texas. The complaint involves Oberheiden's creation of compliance documents and provision of other services to these Texas medical practices, as well as the Texas medical practices' relationship with Access Care, suggesting that the importance of testimony from the medical practices' representatives. Access Care identifies a number of witnesses in Illinois, who presumably are all Access Care employees and would testify about Access Care's relationship with Defendants. Although the Court gives less weight to the convenience of the party witnesses, none of the non-party witnesses identified by either side fall within this Court's subpoena power and it could not compel their testimony at an Illinois trial.

8

*See Cole v. Bell*, No. 09 C 4832, 2009 WL 4730966, at *2 (N.D. Ill. Dec. 7, 2009) ("[T]hese individuals fall outside our subpoena power and we lack the authority to compel their testimony at an Illinois trial."). But proceeding here would not preclude depositions in Texas, with the parties able to use the deposition testimony in lieu of live witnesses should the case reach trial. *See, e.g.*, *In re Hudson*, 710 F.3d 716, 719 (7th Cir. 2013) ("[W]itnesses can be deposed, examined, and cross-examined remotely and their videotaped testimony shown at trial."). Additionally, because of the Texas medical practices' family connection to Access Care's owner, the Court does not rule out their representatives' voluntary appearance in Illinois. But because the only identified non-party witnesses reside in Texas, this factor weighs slightly in favor of transfer. Viewed together with the other private interest factors, the Court finds that it may be slightly more convenient to litigate this case in the Northern District of Texas.

### III. Interest of Justice

"The 'interest of justice' is a separate element of the transfer analysis that relates to the efficient administration of the court system." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). Courts consider factors such as the likelihood of a speedy trial, each court's familiarity with the applicable law, the desirability of resolving controversies in each locale, and the relationship of each community to the controversy. *Id.*; *Coffey*, 796 F.2d at 220.

The fact that Texas law likely applies to at least some claims in this case, and Illinois law applies to others, does not affect the transfer analysis because "federal judges routinely apply the law of a State other than the State in which they sit." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 67, 134 S. Ct. 568, 187 L. Ed. 2d 487 (2013). Next, the average time between filing and disposition in the Northern District of Texas is 7 months versus 7.5

months in this district. The average time from filing to trial in the Northern District of Texas is 26.2 months versus 38.3 months in this district.[4] Although this factor weighs slightly in favor of transfer, it alone is not dispositive, even in light of Defendants' claim that the case is likely to reach trial.

Defendants also point to the existence of related cases in Texas. Indeed, some efficiency is gained by hearing related cases in the same district. *See Levitt v. State of Md. Deposit Ins. Fund Corp.*, 643 F. Supp. 1485, 1493 (E.D.N.Y. 1986) (noting that the transfer of an action to a district where a related case is pending allows for more efficient adjudication). Here, however, the other two cases Defendants claim are related were filed in Texas state court, with the only remaining pending one in a state court in the Eastern District of Texas. Defendants point out that they dismissed the case in the Dallas County courts without prejudice and so could refile it, but this hypothetical does not warrant transfer, particularly where even upon transfer, the cases would not be heard by the same judge, would be on different schedules, and, if they go to trial, would be tried separately. Simply being in the same state does not equate to increased judicial efficiency, and Defendants have failed to show otherwise. Therefore, this factor is neutral.

Finally, both districts have an interest in the controversy. Texas has an interest in ensuring its citizens receive a fair trial, while Illinois has an interest in protecting its companies and upholding its laws. While the parties debate the emphasis the Court should place on these interests, with Defendants essentially arguing that the Illinois Attorney Act and fraud claims have no merit, the Court cannot weigh Access Care's primary motivation for the lawsuit or determine that the Illinois claims are being used merely to keep jurisdiction in this state. Regardless, Illinois' interest in addressing breach of contract and tortious interference claims

---

[4] These figures come from the website of the United States Courts detailing federal court management statistics as of December 2018. *See* https://www.uscourts.gov/sites/default/files/ fcms_na_distprofile1231.2018.pdf.

brought by its citizens remains strong. *See Mercantile Capital Partners v. Agenzia Sports, Inc.*, No. 04 C 5571, 2005 WL 351926, at *3 (N.D. Ill. Feb. 10, 2005) (noting that Illinois has a strong interest in cases where out-of-state defendants "knowingly committed a tort causing an injury in Illinois); *Brandon Apparel*, 42 F. Supp. 2d at 835 ("Illinois courts have a strong interest in hearing breach-of-contract cases involving Illinois residents."). This factor does not favor either venue.

Ultimately, although a close case, Defendants have failed to establish that the balance of private and public interests strongly favors transferring this case to the Northern District of Texas. The purpose of § 1404(a) transfer is not to make incremental improvement: the transferee venue must be "clearly more convenient." *Heller Fin. Inc.*, 883 F.2d at 1293; *In re Nat'l Presto Indus., Inc.*, 347 F.3d at 664 ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947))). That is not the case here, and so the Court denies Defendants' motion to transfer.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion to transfer pursuant to 28 U.S.C. § 1404(a) [16].

Dated: April 2, 2019

_____
SARA L. ELLIS
United States District Judge