## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ACCESS CARE MSO, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 18 C 7273 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| OBERHEIDEN LAW GROUP PLLC, and | ) |
| NICK OBERHEIDEN, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Upon the deterioration of the parties' attorney-client relationship, Plaintiff Access Care MSO, LLC ("Access Care") filed this lawsuit against Defendants Oberheiden Law Group, PLLC ("Oberheiden Law") and its principal, Nick Oberheiden ("Oberheiden"). Access Care claims that Defendants (1) violated the Illinois Attorney Act, 705 Ill. Comp. Stat. 205/1, by engaging in the unauthorized practice of law in Illinois; (2) breached the parties' contract; (3) tortiously interfered with Access Care's contracts with certain medical practices in Texas; and (4) committed fraud in making representations about their practice of law in Illinois. Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court finds that Access Care has sufficiently alleged a violation of the Illinois Attorney Act and common law fraud. But because Access Care does not adequately plead the elements of a tortious interference with contract claim and Texas law does not recognize a breach of contract claim for what amounts to legal malpractice, the Court dismisses those claims.

# BACKGROUND[1]

Access Care, based in Oak Brook, Illinois, provides management services for health care entities. The majority of the medical practices that Access Care manages are in Texas and a relative of Access Care's owner owns most of the practices. Access Care sought legal help with compliance issues in both Illinois and Texas. After searching the Internet, Access Care hired Oberheiden Law based on its advertisements that it has both a Texas and Illinois practice. On its website, Oberheiden Law specifically advertises that it has a "Team of Chicago Health Care Fraud Defense Attorneys," with several pages devoted to its provision of Illinois and Chicago health care fraud and federal criminal defense. Doc. 1-1 ¶ 14. Oberheiden Law's website also advertises Oberheiden as a Chicago and Illinois defense attorney. Oberheiden and the other attorneys at Oberheiden Law are not licensed to practice law in Illinois, although Oberheiden gained admission to practice before the U.S. District Court for the Northern District of Illinois after Access Care retained Oberheiden Law. Oberheiden Law's website does include a disclaimer that Oberheiden is not licensed in Illinois and limits his practice to federal matters.

In Access Care's agreement with Oberheiden Law (the "Agreement"), effective February 15, 2017, Oberheiden Law agreed to provide corporate and regulatory advice regarding Access Care's health care projects, to conduct a review of and training concerning compliance issues, and to establish a corporate compliance program. The Agreement further provided that Oberheiden Law representatives would work on-site in Illinois for at least fifteen days. Although this did not happen, Oberheiden and another Oberheiden Law employee, Chris Anderson, did each spend a day at Access Care's Oak Brook facility. Anderson, who is not

---

[1] The Court takes the facts in the background section from Access Care's complaint and the exhibits attached thereto and treats them as true for the purpose of resolving Defendants' motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

licensed to practice law, provided Access Care with legal advice about ERISA compliance and the structuring of contracts.

The Agreement stated that Access Care would pay Oberheiden Law $7,500 per month for legal services, with that amount increased to a total of $45,000 in the first two months to complete the contemplated compliance program. Over approximately a year, Oberheiden Law billed Access Care $165,000. But Oberheiden Law never created the compliance program contemplated by the Agreement. It did, however, provide various services to Access Care's Texas medical practices.

Because it concluded that Oberheiden Law was not providing the agreed upon services, Access Care terminated the Agreement. In September 2018, Oberheiden Law sent the Texas medical practices a letter demanding one million dollars in payment for their use of corporate compliance documents that Oberheiden Law had prepared. Oberheiden Law also threatened to file suit against the Texas medical practices.[2]

**LEGAL STANDARD**

A motion to dismiss under 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the

---

[2] The Texas medical practices and Defendants are parties to a case in the District Court of Jefferson County, Texas in which the Texas medical practices seek a declaratory judgment that they were clients of Defendants and did not misappropriate any documents.

3

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

**I.      Illinois Attorney Act Claim**

The Illinois Attorney Act provides that "[n]o person shall be permitted to practice as an attorney or counselor at law within this State without having previously obtained a license for that purpose from the Supreme Court of this State." 705 Ill. Comp. Stat. 205/1. Additionally, "[n]o person shall receive any compensation directly or indirectly for any legal services other than a regularly licensed attorney, nor may an unlicensed person advertise or hold himself or herself out to provide legal services." *Id.* Under the Illinois Attorney Act, "[a]ny person practicing, charging or receiving fees for legal services or advertising or holding himself or herself out to provide legal services within this State, either directly or indirectly, without being licensed to practice as herein required, is guilty of contempt of court." *Id.*

Defendants seek dismissal of Access Care's Illinois Attorney Act claim, arguing that Access Care has not alleged that Defendants engaged in the unlicensed practice of law in Illinois and instead complains about allegedly false advertising with respect to services that Access Care did not retain Defendants to perform.[3] But the Illinois Attorney Act specifically prohibits an

---

[3] Although Defendants do not argue that the Illinois Attorney Act does not provide Access Care with a private right of action for injunctive relief, the Court questions whether Access Care falls within the class of individuals who may seek injunctive relief under the Act. *See Edelson PC v. Bandas Law Firm PC*, No. 16 C 11057, 2018 WL 3496085, at *9 (N.D. Ill. July 20, 2018) ("Other attorneys and law firms have standing to sue for such an injunction '[b]ecause the practice of law by an entity not licensed constitutes an infringement on the rights of those who are properly licensed.'" (citation omitted)); *Jenkins v. Burkey*, No. 16-cv-792-JPG-SCW, 2017 WL 2687815, at *6 (S.D. Ill. June 22, 2017) ("The only people who can bring an unauthorized practice of law cause of action are other attorneys licensed in Illinois because 'the practice of law by unlicensed persons constitutes an infringement upon the rights of those who are properly licensed.'" (citation omitted)). Because the Supreme Court has suggested that this question does not implicate the Court's subject matter jurisdiction but rather is a "straightforward question of statutory interpretation" as to whether a statute provides a plaintiff with a cause of action, however, the Court cannot *sua sponte* dismiss the claim on this basis. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*,

unlicensed attorney from advertising the provision of legal services in Illinois and Defendants do not point to any provision in the Act that limits this prohibition to advertisements for services for which the plaintiff retained the defendant. With respect to the alleged improper advertisement, Access Care's complaint includes excerpts from Defendants' website, in which Defendants tout their experience in Illinois, list counties in Illinois that they serve, and advertise themselves as providing "Illinois health care fraud defense," among other things. Doc 1-1. ¶¶ 13–17. The website also specifically describes Oberheiden as an "Illinois health care fraud defense attorney" and a "Chicago defense attorney." *Id.* ¶¶ 13, 17. While Defendants argue that these advertisements relate only to federal criminal defense and that the Illinois Attorney Act does not regulate federal practice, at this stage, Access Care has plausibly alleged that Defendants' advertisements touched on more than just the provision of legal services in federal court and extended to the "compliance programs" for which Access Care retained Defendants. *Id.* ¶ 14. And the advertisements plausibly suggest a statewide practice in Illinois by using the Illinois flag and "offer[ing] [Oberheiden Law's] services to clients in Chicago as well as throughout Illinois state." *Id*. Given the allegations that Oberheiden Law did not have any licensed Illinois attorneys, these advertisements plausibly suggest an Illinois Attorney Act violation.[4]

Access Care also plausibly suggests that Defendants provided legal services without being licensed in Illinois. "The practice of law is not limited to court appearances, but includes the giving of advice or the rendition of any service requiring the use of any degree of legal

---

572 U.S. 118, 126–29 (2014); *Knopick v. Jayco, Inc.*, 895 F.3d 525, 529 (7th Cir. 2018); *LQD Bus. Fin., LLC v. Fundkite, LLC*, No. 19 C 4416, 2020 WL 635906, at *3 n.2 (N.D. Ill. Feb. 11, 2020).

[4] Although the complaint does acknowledge that Oberheiden gained admission to the general bar of the U.S. District Court for the Northern District of Illinois, Access Care's claims do not concern Oberheiden's ability to practice in Illinois federal courts. The Court will not consider any factual defense that Oberheiden's admission to the Northern District of Illinois' general bar provides to the Illinois Attorney Act claim at the pleading stage.

knowledge or skill." *Lozoff v. Shore Heights, Ltd.*, 35 Ill. App. 3d 697, 700 (1976). Per the Agreement, Defendants agreed to provide legal services including "(a) corporate and regulatory advice regarding Client's healthcare projects and investment as well as (b) compliance review and training and establishment of a corporate compliance program." Doc. 1-1 at 19. Defendants argue that the compliance program related to Defendants' practice in Texas, not Illinois, with the purpose to serve Access Care's clients in Texas. But as set forth in the complaint, Defendants agreed to provide on-site services in Illinois, Oberheiden visited Illinois to provide legal advice to Access Care, and another Oberheiden Law non-attorney provided legal advice to Access Care while in Illinois. Defendants ask the Court to make factual determinations to assess whether Defendants need not have been licensed in Illinois to provide Access Care with the legal services set forth in the Agreement, but this amounts to a determination the Court cannot make on the pleadings alone. *See Colmar, Ltd. v. Fremantlemedia N. Am., Inc.*, 344 Ill. App. 3d 977, 986 (2003) ("When other activities of a lawyer in a non-home state are challenged as impermissible for lack of admission to the state's bar, the context in which and purposes for which the lawyer acts should be carefully assessed." (quoting Restatement (Third) of Law Governing Lawyers § 3 cmt. e (2000))). Although factual questions may arise undermining its claim, at this stage, Access Care plausibly alleges a violation of the Illinois Attorney Act.

## II.     Breach of Contract (Count II)

Oberheiden Law also asks that the Court dismiss Access Care's breach of contract claim, arguing that this claim is more appropriately characterized as one for legal malpractice.[5] Access Care responds that its claim does not amount to a veiled legal malpractice claim but rather encompasses the breach of a specific contractual undertaking—to establish a corporate

---

[5] Oberheiden Law does not argue that Access Care has failed to plead the elements of a breach of contract claim.

compliance program—despite Access Care's payment of the agreed upon fees. The parties agree that, per the terms of the Agreement, Texas law governs.

Texas law does not allow a plaintiff to recast a professional negligence claim into one for breach of contract where the "gravamen of [the] complaints . . . focus[es] on the quality or adequacy of the attorney's representation."[6] *Won Pak v. Harris*, 313 S.W.3d 454, 547 (Tex. App. 2010); *see also Greathouse v. McConnell*, 982 S.W.2d 165, 172 (Tex. App. 1998) ("A cause of action arising out of bad legal advice or improper representation is legal malpractice."). This does not foreclose all breach of contract claims, but Texas courts have only allowed independent breach of contract claims against attorneys for excessive legal fees. *See Jampole v. Matthews*, 857 S.W.2d 57, 62 (Tex. App. 1993).

Although Access Care alleges that it paid Oberheiden Law for services it did not receive, it does not base its breach of contract claim on Oberheiden Law charging excessive or unreasonable fees but instead on Oberheiden Law's failure to provide adequate services. *See Lawson*, 2018 WL 7204065, at *3 (distinguishing between breach of contract claims based on reasonableness of fees, which could proceed independently, and those for failure to perform as agreed in the contract, which a malpractice claim encompasses). As in *Greathouse*, Access Care "alleges only that, by not taking certain actions during the course of [its] representation, [Oberheiden Law] did not provide the services for which [Access Care] contracted, *i.e.,* the services that a reasonably prudent attorney would have provided." *Greathouse*, 982 S.W.2d at 172 n.2. This amounts to a legal malpractice claim, one which, under Texas law, Access Care cannot pursue under the guise of a breach of contract. *See Rangel v. Lapin*, 177 S.W.3d 17, 24 (Tex. App. 2005) (claim that firm "breached its contract to 'prosecute and collect any claims'

---

[6] Texas' anti-fracturing rule "is not a pleading standard, but a substantive rule on what constitutes actionable claims under Texas law," and so applies in this diversity case. *Lawson v. Morrison*, No. A-17-CV-01001-SS, 2018 WL 7204065, at *2 n.1 (W.D. Tex. July 12, 2018).

7

amounted to a legal malpractice claim for failure to provide adequate legal representation); *Averitt v. PriceWaterhouseCoopers L.L.P.*, 89 S.W.3d 330, 334 (Tex. App. 2002) ("Whether a written contract providing for professional services exists between a professional and his client or not, a cause of action based on the alleged failure to perform a professional service is a tort rather than a breach of contract."). Access Care may choose to replead its claim as one for legal malpractice, but it may not proceed on a breach of contract theory.

### III. Tortious Interference with Contract (Count III)

In Count III, Access Care alleges that Defendants tortiously interfered with its "relationship and agreement with the Texas Medical Practices . . . by demanding a payment of $1 million or threatening to falsely disclose confidential information." Doc. 1-1 ¶¶ 57–59. Defendants argue that Access Care has failed to sufficiently plead the elements of this claim.

Initially, the parties disagree as to whether Illinois or Texas law governs this claim, but the Court need not engage in a choice of law analysis because they have not identified any material differences between the substantive laws of these two states. The Court therefore applies Illinois law, the forum state, and includes parallel citations to Texas law where relevant. *See Camp v. TNT Logistics Corp.*, 553 F.3d 502, 505 (7th Cir. 2009); *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 2014 IL 116389, ¶ 25 ("[A] choice-of-law determination is required only when the moving party has established an actual conflict between state laws."). Further, while state substantive law applies, the Court uses federal notice pleading standards to determine whether Access Care has sufficiently alleged the elements of the claim. *See Windy City Metal Fabricators & Supply, Inc v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008).

8

To state a claim for tortious interference with contract under Illinois law, Access Care must allege (1) the existence of a valid and enforceable contract between Access Care and the Texas medical practices; (2) Defendants' awareness of the contract; (3) Defendants' intentional and unjustified inducement of a breach of the contract; (4) the Texas medical practices' breach of the contract, caused by Defendants' conduct; and (5) damages.[7] *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 154–55 (1989); *see Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000) ("We have identified the elements of tortious interference with an existing contract as: (1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss."). Even under the liberal notice pleading standards, Access Care's allegations are rather conclusory. Access Care does not allege that Defendants' alleged blackmailing of the Texas medical practices caused the Texas medical practices to breach their agreements with Access Care or somehow caused injury to Access Care. *See Catapult Commc'ns Corp v. Foster*, No. 06 C 6112, 2010 WL 3699924, at *3 (N.D. Ill. Sept. 13, 2010) (collecting cases requiring a plaintiff to demonstrate an actual breach of contract to maintain a tortious interference with contract claim); *Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 361 (Tex. App. 2013) (requiring allegations of an actual breach for a tortious interference with contract claim). Instead, the complaint is silent as to how Defendants' alleged interference affected Access Care's contractual relationship with the Texas medical practices. Absent allegations suggesting a negative impact, Access Care cannot proceed on its tortious interference with contract claim. *See Cartwright v. Cooney*, 788 F. Supp. 2d 744, 754 (N.D. Ill. 2011) (dismissing tortious interference claim where the plaintiff failed to

---

[7] Both parties address this claim as one for tortious interference with contract as opposed to with an existing business relationship, despite some references in the complaint to Access Care's ongoing relationship with the Texas medical practices.

9

allege any breach of contract and no basis existed for the court to infer damages resulted from the defendant's conduct); *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 750 (5th Cir. 2019) (affirming the dismissal of a tortious interference with contract claim under Texas law where the plaintiff failed to identify an actual breach of contract).

**IV.     Common Law Fraud (Count IV)**

Finally, Defendants seek dismissal of Access Care's common law fraud claim, arguing that Access Care has not complied with Rule 9(b)'s heightened pleading requirement and that Access Care cannot use a fraud claim to seek damages for the same conduct it claims violates the Illinois Attorney Act. Taking the second argument first, the lack of a private right of action for damages under the Illinois Attorney Act does not preclude a plaintiff from pursuing other common law or statutory remedies for conduct that allegedly violates that Act. *King v. First Capital Fin. Servs. Corp.*, 215 Ill. 2d 1, 27 (2005) ("[A]ny remedies provided in other statutes or by the common law are not foreclosed by the existence of the contempt remedy in the Attorney Act."); *Torres v. Fiol*, 110 Ill. App. 3d 9, 11–12 (1982) (allowing the plaintiffs to pursue a negligence claim for the defendant's alleged unauthorized practice of law).

As for the sufficiency of the pleadings, to state a fraud claim, Access Care must allege that (1) Defendants made a false statement of material fact, (2) Defendants knew of or believed in the statement's falsity, (3) Defendants intended to induce Access Care to act, (4) Access Care acted in justifiable reliance on the truth of the statement, and (5) damages resulted from Access Care's reliance. *Doe v. Dilling*, 228 Ill. 2d 324, 342–43 (2008). Rule 9(b) requires Access Care to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "This ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case."

10

*AnchorBank*, 649 F.3d at 615 (citing *Pirelli Armstrong Tire Corp. Ret. Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011)). However, Access Care may allege states of mind generally. Fed. R. Civ. P. 9(b).

Defendants argue that Access Care has failed to sufficiently allege a false statement and justifiable reliance. But Access Care specifically sets forth four allegedly false statements found on the Oberheiden Law website concerning Defendants' ability to practice law in Illinois. Access Care further alleges that these statements were false because Defendants have not handled a single case in Illinois and were not, in fact, licensed to practice law in Illinois at the time they made the representations at issue.[8] Although discovery may reveal otherwise, at this stage, Access Care has sufficiently alleged that Defendants made false statements. *See Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006) ("Rule 9(b) does not require a plaintiff to demonstrate that a representation was indeed false.").

Access Care also sufficiently alleges justifiable reliance on the truth of Defendants' statements, claiming that it hired Defendants based not only on the representations on the Oberheiden Law website "designed to target Illinois-based clients" but also "because of the perceived dual geographic locations, *i.e.*, availability to practice in Illinois (where Access Care is located) and because of Oberheiden Law's offices in Texas (where the Texas Medical Practices are located)." Doc. 1-1 ¶¶ 10–11, 65–66. Defendants argue that none of the alleged false statements related to the services that Access Care retained Defendants to perform, but this

---

[8] Defendants point out that the complaint acknowledges that Oberheiden gained admission to the U.S. District Court for the Northern District of Illinois on December 6, 2017 and that the complaint does not provide a timeframe for when Defendants made the alleged false statements. Oberheiden's admission to the Northern District of Illinois general bar does not undermine Access Care's allegations that, at the time it decided to engage Defendants, Defendants' statements on their website about an Illinois practice were false.

involves a factual argument more appropriate to resolution on a fully developed record. At this stage, Access Care has sufficiently alleged reliance so as to proceed on its fraud claim.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss [26]. The Court dismisses the breach of contract and tortious interference with contract claims (Counts II and III) without prejudice.

Dated: March 9, 2020

SARA L. ELLIS
United States District Judge